IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Shirley Mann,  )<br>  )<br>             Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>Michael J. Astrue, Commissioner of  )<br>Social Security,  )<br>  )<br>             Defendant.  )<br>_____ | Civil Action No. 8:07-2966-HMH-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B)

The plaintiff, Shirley Mann, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration regarding her claim for social security income ("SSI") and disabled widow's benefits ("DWB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 55 years old at the time of her alleged onset of disability, April 15, 1998, (R. 59, 105.) and 65 years old on the date of the Administrative Law Judge's (ALJ) post-remand decision. She has a high-school education and received training as a cosmetologist. (R. at 92.) The plaintiff worked in the relevant past as a house parent for mentally retarded adults, cosmetologist, and beauty salon manager. (R. at 87, 118.)

1

The plaintiff filed an application for SSI on October 9, 2001, alleging that she had been disabled since April 15, 1998, due to chronic pain in her left wrist, left hand, and spine from arthritis and a dowager's hump; high blood pressure, high cholesterol and fluid retention; anxiety and depression; migraine headaches; and fibromyalgia. (R. at 86, 105, 440-42, 452, 457.) Both claims were denied by the ALJ on February 24, 2004, and the Appeals Council denied Plaintiff's request for review. (R. at 6-9.)

The undersigned United States Magistrate Judge recommended that the Commissioner's decision be affirmed. (R. at 340-56). However, the United States District Court entered judgment reversing and remanding the decision for further administrative proceedings on July 26, 2006. (R. at 327-39).

The Appeals Council issued its remand Order on September 1, 2006. (R. at 359.) After a supplemental hearing, (R. at 438-80), the ALJ issued a second unfavorable decision on May 17, 2007, finding plaintiff was not disabled. (R. at 289-305). The decision became the final decision of the Commissioner for purposes of judicial review.

The ALJ made the following findings:

1. The claimant met all of the nondisability requirements for Disabled Widow's Insurance Benefits set forth in Section 202(e) of the Social Security Act, and had a prescribed period that began September 1, 1994, and ended August 31, 2001.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has low back pain and residuals of a left wrist fracture, impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b) but severe enough to "meet" or "equal" one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant's allegations regarding her limitations are less than fully

      credible.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

6. The claimant has the residual functional capacity to perform work with restrictions that require no lifting or carrying over 25 pounds frequently, 50 pounds occasionally; limited stooping, crouching and climbing of ladders or scaffolds; and no constant gripping or grasping with the left (non-dominant) hand.

7. [omitted]

8. The claimant's past relevant work as a hair stylist, as generally performed in the economy, did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

9. The claimant's medically determinable impairments do not prevent her from performing her past relevant work.

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e) and 416.920(e)).

(R. at 25.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational

4

expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give proper weight to the medical evidence in dismissing her osteoporosis and osteoarthritis, as well as other impairments, as severe; (2) performing a proper analysis of the treating and examining physician opinions required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p; and (3) not properly assessing the plaintiff's residual functional capacity, as required by Social Security ruling 96-8p. The Court will address each alleged error in turn.

**I.      Severe Impairments**

The plaintiff's first and principle objection to the ALJ's decision is that her osteoporosis, osteoarthritis, advance degenerative disease of the cervical spine, and migraine headaches were not found to be "severe" impairments. Instead, the ALJ found only that the plaintiff's "degenerative changes of her lumbar spine and residuals of left wrist fracture" were severe. (R. at 292.)

The plaintiff's burden to show a severe impairment is not an exacting one. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *Albright v. Commissioner of*

6

*Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999). In short, the "inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd 2004).

Here, the plaintiff cites to substantial evidence that she suffered severe osteoporosis. Dr. John C Baker diagnosed the plaintiff with severe osteoporosis. (R. at 151.) His evaluation specifically noted the plaintiff's obvious spinal deformity: a "pronounced" Dowager hump that is formed as a result of multiple spinal compression fractures. *Id*. Dr. Baker also reviewed x-rays which he interpreted as indicating multiple level disk disease of the cervical, thoracic, and lumbar spine with arthritic facets and severe osteporosis. *Id*. Dr. Baker concluded that the plaintiff did not need any further evaluation or testing, but that she could have a DEXAscan, "which will merely document what the x-rays already show." (R. at 152.) Further, other evaluating doctors assessed the plaintiff as having considerable osteoporosis, and these assessments were confirmed with objective testing. (R. at 206, 210, 220.)

The ALJ, however, concluded based on the results of the DEXAscan, recommended by Dr. Baker, that the plaintiff's condition was not severe. Specifically, the ALJ found that the DEXAscan results showed that the plaintiff's "bone mineral density [was] within normal limits" (R. at 427, 432). (R. at 301.)

There is no dispute between the parties as to the results of the DEXAscan. The plaintiff argues, however, that the ALJ had an obligation to reconcile the conflicting evidence – Dr. Baker's assessment that the plaintiff's osteoporosis was severe and the DEXAscan demonstrating no bone density abnormality. The plaintiff emphasizes that Dr.

Baker did not recommend the DEXAscan to diagnose osteoporosis, in the first instance, but simply to measure the "level" or extent of that condition.  (R. at 152.)  In other words, Dr. Baker's diagnosis did not turn on the results of the DEXAscan, according to his own notes.  *See id.*  In fact, Dr. Baker expressly concluded that as a result of her condition the plaintiff was totally disabled and that "she would be a liability to any employer on the current economy."  *Id*.

The defendant responds that in spite of Dr. Baker's diagnosis in 1999, the DEXAscan, in 2004, was clear that the plaintiff's bone density was within normal limits and that the ALJ was entitled to rely on such evidence to conclude that the plaintiff's condition was non-severe.

For the Court, the issue is a close call.  The DEXAscan results, on their face, appear to be reliable objective findings, directly contrary to a conclusion that the plaintiff suffers severe osteoporosis.  But, the apparent meaning of those results is the problem.  The record does not appear to contain any interpretation of the DEXAscan and certainly none attempting to reconcile the clinical diagnosis of Dr. Baker and the objective results.  While the plaintiff has advanced a theory on why the two might have been incongruous, the Court agrees with the defendant that such arguments are speculative and are not appropriate for this Court to consider in resolving the matter.  The central issue, instead, is whether the ALJ was under an affirmative obligation to do more, in light of the apparent conflict.

To that end, the Court is reminded of the important fact that the ALJ is not a medical expert.  While ALJs certainly develop a professional expertise in the execution of their judicial duties, they are neither equipped nor legally permitted to make medical

determinations or interpretations. "An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "[A]n ALJ, as a lay person, is not qualified to interpret raw data in a medical record." *Manso-Pizarro v. Sec'y of Health & Human Services*, 76 F.3d 15, 17 (1st Cir.1996); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (an ALJ is "simply not qualified to interpret raw medical data in functional terms . . . ").

The Court, therefore, is not convinced, in spite of the DEXAscan results, that it was permissible for the ALJ to simply pit those results against the previous conclusions of Dr. Baker and conclude that the osteoporisis was not, in fact, severe. Other courts have found that "[b]y independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985). Critically, "[b]ecause an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been *no supporting expert testimony*." *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) (emphasis added). Here, notwithstanding Dr. Baker's unambiguous diagnosis, the ALJ interpreted the DEXAscan results as an absolute repudiation of Dr. Baker's conclusion. The Court believes that this determination was beyond the ALJ's power to weigh the relative evidence. The ALJ's decision required more than a comparative assessment. It required the ALJ to conclude the exact meaning and implications of a piece of medical evidence – the DEXAscan results.

The Court honestly has no idea whether the result that the plaintiff's bone density was "within normal limits" eliminates either the possibility of osteoporosis or the possibility that it was severe. It seems to be a possible conclusion but there is no medical testimony to that end. And while the ALJ, for his better experience, might have a sense about the meaning of such results, he is constrained from making assumptions and interpretations about the medical evidence, even if those assumptions and interpretations are educated ones.

If there was a medical opinion by a physician that stated that the DEXAscan results indicated that the plaintiff's osteoporosis was not, in fact, severe, then the ALJ would have been entitled to give that opinion deference over Dr. Baker's. But the ALJ, himself, may not extrapolate an opinion concerning the DEXAscan results and then diminish Dr. Baker's opinion on that basis. The ALJ must rely on some expert mediation of that data.

As a result, the Court cannot conclude that the DEXAscan results, on their face, were substantial evidence to reject Dr. Baker's opinion and conclude that the osteoporosis was non-severe. On remand, the ALJ should re-examine the record for some expert interpretation of the results. It may be necessary to call an expert witness, which is within the ALJ's authority.

As stated, the plaintiff has offered a rationale for why the DEXAscan may have produced results incongruous with Dr. Baker's diagnosis. Those reasons form no basis of the Court's decision to remand.

Concerning the plaintiff's alleged osteoarthritis, headache, and cervical spine impairments, the Court disagrees that the case should be remanded for additional

consideration as to their severity. The ALJ's decision is imminently thorough. The ALJ specifically details his reasons for finding these impairments non-severe. (R. at 296.) The ALJ did not make an improper interpretation of the medical evidence in regards to these impairments, as with the osteoporosis. The Court does agree that the ALJ flirted with effectively applying a heightened standard for establishing a "severe" impairment than is required. As stated, that burden is generally not onerous. *See* SSR 85-28; *see also Evans*, 734 F.2d at 1014. The plaintiff has submitted significant evidence which would appear to establish a threshold showing of severity.

As to her cervical spine condition, the plaintiff emphasizes that cervical spine x-rays indicated the plaintiff had "advanced degenerative changes with disc space narrowing and prominent bridging anterior osteophytes at C3 through C7 levels." (R. at 220.) As described, Dr. Baker's clinical examination showed that the plaintiff has a Dowager Hump resulting from her osteoporosis.

As to her osteoarthritis, the plaintiff has shown evidence that she has osteoarthritis in almost every location that was tested, including her cervical and lumbar spine, knees, wrists and hands, shoulder, and feet and ankles. (R. at 151, 173, 205, 206, 210, 220, 376, 383, 384, 386-87.)

As to her migraine headaches, the plaintiff highlights evidence that she had to postpone the first supplemental hearing due to a migraine headache (R. at 446) and that she had been prescribed Imitrex for them.

Notwithstanding, the ALJ specifically discussed whether there were actually limitations resulting from these conditions. (R. at 296.) The ALJ generally concluded that

11

there were none or that the residual functional capacity prescribed would accommodate them. (R. at 296.) Thus, even if the ALJ should have found these impairments severe, the plaintiff is required to show how these conditions would have changed the ALJ's determination as to the plaintiff's limitations and resulting RFC, otherwise any error is harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). She has not done so, particularly as to her headaches.

The Court would not remand the case on the basis of the ALJ's treatment of these additional impairments alone. It does not seem overeaching to ask the ALJ, however, to at least reconsider his analysis as to the cervical spine condition and osteoarthritis, upon remand for consideration of the osteoporosis.

The Court is more concerned for the ALJ's treatment of the osteoporosis issue because of the potential effect the improper medical interpretation may have caused. The ALJ's conclusion that the plaintiff had no osteoporosis on the basis of the DEXAscan was a significant determination that likely colored his view of the overall disability issue and necessarily reduced the need to consider certain related evidence in the record.

The ALJ, therefore, should reconsider whether the plaintiff's osteoporois was severe. Such a determination is essential because the Social Security Act mandates consideration of the "combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. Sec.423(d)(2)(B). The ALJ should also take some effort to reconsider the severity

of her osteoarthritis and cervical spine condition and whether such reconsideration might alter his view of the plaintiff's overall RFC.

The Court is loathe to recommend a second remand in this case, but the Court itself, like the ALJ, cannot interpret the DEXAscan results. An outright award of benefits would not, therefore, be appropriate.

## II.    Treating Physicians

As a corollary to her first objection, the plaintiff contends that the ALJ improperly diminished the weight given to treating and examining physicians, including Dr. Baker, in light of the results of the DEXAscan. The Court agrees that upon remand, the ALJ should reconsider whether the opinion of any of the plaintiff's treating or examining physicians is rehabilitated in light of a reinterpretation of the DEXAscan results or other evidence related to the plaintiff's osteoporosis, if any. The remand, in this regard, is narrowly limited to whether or not the ALJ's reassessment of the evidence related to the plaintiff's osteoporosis modifies his view of the plaintiff's treating and examining physicians. That treatment is otherwise thorough and without objection. (R. at 301-02.) The plaintiff does not contend otherwise.

## III.    Residual Functional Capacity

Lastly, the Court agrees with the plaintiff that the ALJ's reassessment of the severity of the plaintiff's osteoporosis will necessarily require a new RFC determination, in the event the ALJ finds the condition severe.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ' s decision to deny benefits was supported by substantial evidence. It is, therefore, ORDERED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above.  *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>United States Magistrate Judge

November 17, 2008
Greenville, South Carolina